**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AAS/EJD
F. #2021R00184

271 Cadman Plaza East
Brooklyn, New York 11201

June 24, 2022

<u>By E-mail</u>

The Honorable James R. Cho
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Derrick Taylor and Craig Miller
            <u>Docket No. 22-MJ-665</u>

Dear Judge Cho:

        The government respectfully moves for an order unsealing the Complaint in the above-captioned case. Yesterday, the Court unsealed this complaint as to Derrick Taylor only because the remaining defendant, Craig Miller, had not yet been apprehended. Craig Miller was apprehended today, June 24, 2022, and the government now seeks to unseal the complaint in full, with the exception of footnote 3 in the Complaint, as it contains information from a search warrant affidavit that is under seal. The government attaches the Complaint with footnote 3 redacted as Exhibit A to this letter.

        The government attaches a proposed order unsealing the Complaint.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:          /s/
        Emily J. Dean
        Assistant U.S. Attorney
        (718) 254-6120

Enclosure

cc:    Clerk of Court (by Email)

AAS/EJD
F. #2021R00184

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

DERRICK TAYLOR
and CRAIG MILLER,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

~~PROPOSED~~  O R D E R

Case No. 22-MJ-665

        Upon the application of BREON PEACE, United States Attorney for the Eastern

District of New York, by Assistant United States Attorney Emily J. Dean for an order unsealing

the Complaint in the above-captioned matter, and upon consideration of the reasons set forth in

the application, it is hereby:

        ORDERED that the above-captioned Complaint be unsealed as to the defendants

DERRICK TAYLOR and CRAIG MILLER,

        ORDERED that Exhibit A hereto be filed on the docket so that the Complaint in

the above may be unsealed and footnote three remain redacted.

Dated:  Brooklyn, New York
       June 24, 2022


                s/ James R. Cho
                HONORABLE JAMES R. CHO
                UNITED STATES MAGISTRATE JUDGE
                EASTERN DISTRICT OF NEW YORK

# EXHIBIT A

DMP:AAS/EJD
F. #2021R00184

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

C O M P L A I N T

- against -

(18 U.S.C. §§ 1001(a)(2), 1512(c)(1),
1512(c)(2))

CRAIG MILLER and
DERRICK TAYLOR,

No. 22-MJ-665

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

EDWARD TAM, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as

such.

In or about April 2022, within the Eastern District of New York and elsewhere,

the defendant DERRICK TAYLOR did knowingly, intentionally and corruptly attempt to

obstruct, influence and impede an official proceeding, to wit: a Federal Grand Jury

investigation in the Eastern District of New York.

(Title 18, United States Code, Section 1512(c)(2))

On or about June 17, 2022, within the Eastern District of New York and

elsewhere, the defendant CRAIG MILLER did knowingly, intentionally and corruptly alter,

destroy, mutilate and conceal a record, document and other object, to wit: one or more text

messages between MILLER and DERRICK TAYLOR, with the intent to impair the object's

integrity and availability for use in an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York.

(Title 18, United States Code, Section 1512(c)(1))

On or about April 11, 2022, within the Eastern District of New York and elsewhere, the defendant DERRICK TAYLOR did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the FBI, in that TAYLOR falsely stated and represented to FBI Special Agents that he had obtained U.S. passport information of one or more other persons through the "Black Dark Web."

(Title 18, United States Code, Section 1001(a)(2))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). Since becoming a Special Agent, I have participated in numerous investigations into organized criminal activity, during which I have, among other things: (a) conducted physical and electronic surveillance, (b) reviewed search warrant returns, (c) reviewed and analyzed recorded conversations and records, and (d) debriefed cooperating witnesses and informants. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file, and reports of other law enforcement officers involved in the investigation.

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

**PROBABLE CAUSE**

I.    Introduction

2.    On March 9, 2022, the Honorable Marcia Henry, U.S. Magistrate Judge for the Eastern District of New York, authorized a criminal complaint (the "Transnational Repression Complaint") charging Fan "Frank" Liu, Matthew Ziburis, and Qiang "Jason" Sun with various crimes in connection with a transnational repression scheme targeting dissidents of the People's Republic of China (the "PRC") residing in the United States.  (See 22-MJ-257).  The Transnational Repression Complaint discusses, among other items, Liu, Ziburis, and Sun's efforts to target two PRC dissidents residing in the United States, who are referred to in the Transnational Repression Complaint as "Dissident 2" and "Dissident 3."

3.    This Affidavit pertains to attempts to obstruct an investigation into efforts to obtain personal identifying information of Dissident 2 and Dissident 3 through confidential law enforcement databases for use in the charged transnational repression scheme.

II.    The Defendants and the Coconspirators

4.    DERRICK TAYLOR is a retired federal agent with the U.S. Department of Homeland Security ("DHS") who is presently employed as a private investigator in Irvine, California.

5.    CRAIG MILLER is a current DHS employee stationed in the Minneapolis, Minnesota, metropolitan area who has worked with DHS for fifteen years. MILLER serves as a Deportations Officer with the DHS Enforcement and Removal Operations and is responsible for the removal of undocumented individuals.   He was previously stationed in the Los Angeles, California, metropolitan area.

6.     Coconspirator 1 ("CC-1") operated a private investigation firm in Orange County, California.

7.     Coconspirator 2 ("CC-2") is a recently retired Deportations Officer with the DHS Enforcement and Removal Operations who was stationed in the Los Angeles, California, metropolitan area.   He resides in Long Beach, California.

III.    Background

    A.     The Improper Queries of Law Enforcement Databases

8.     The investigation has revealed that coconspirators described in the Transnational Repression Complaint, including Liu, tasked CC-1 with obtaining personal identifying information of Dissident 2 and Dissident 3, and that CC-1, in turn, retained TAYLOR to obtain the information.   TAYLOR requested that CC-2 provide him with information about Dissident 2, and then TAYLOR passed information from CC-2 to CC-1. After CC-2 declined to assist TAYLOR further, TAYLOR obtained information about Dissident 3 from MILLER and passed information from MILLER to CC-1.

9.     Both MILLER and CC-2 accessed the U.S. Citizenship and Immigration Services ("U.S.C.I.S") Person Centric Query Services ("PCQS") database to query information for TAYLOR.   PCQS enables users to submit a single query to view all incidents involving an immigrant or non-immigrant across a variety of DHS and external agency databases.  PCQS produces a consolidated dataset of an individual's interactions with the DHS and other government agencies as they interact with the U.S. immigration system.   The PCQS database is marked "For Official Use Only."   When a user attempts to access PCQS, the user is warned that "Unauthorized or improper use or access of this system may result in

disciplinary action, as well as civil and criminal penalties." TAYLOR was not a member of law enforcement when he sent or received the photographs of PCQS described herein.

*Dissident 2*

10. The investigation has uncovered electronic communications in which CC-1 tasked TAYLOR with obtaining information about Dissident 2 for Liu, and then TAYLOR obtained the information from CC-2.

11. In a text conversation on or about July 16, 2021, TAYLOR and CC-1 discussed the cost for obtaining the "immigration status, [and] u.s. custom information" for Dissident 2. CC-1 then wrote Dissident 2's name and date of birth and indicated CC-1's email account would serve as CC-1's contact information for TAYLOR.

12. In a text message on or about July 13, 2021, TAYLOR asked CC-2, "Is there a quick way that I can check if some guy[']s departed to China?" In a text exchange on or about July 16, 2021, TAYLOR then provided CC-2 with Dissident 2's name and date of birth and asked for Dissident 2's "status and passport departure." The same day, CC-2 responded, "He was admitted into the US until 11/26/2021 with a B2 Visa." TAYLOR responded, "Thank you brother! Do you smoke cigars or what's your favorite tequila[?]" CC-2 responded, "I'm good, bro."[2]

13. On or about July 19, 2021, TAYLOR emailed CC-1 what appears to be a photograph of a computer screen containing immigration records for Dissident 2. The screenshot appears to be of a PCQS database query for Dissident 2's border crossings. In the

---

[2] In an interview with FBI agents on or about June 17, 2022, CC-2 claimed that TAYLOR only provided names to CC-2 that were potential leads for CC-2's new immigration cases.

email, TAYLOR wrote, "He was admitted into the U.S. on a B-2 Visa, which is still valid until 11/26/2021."

14.     In a subsequent text on July 19, 2021, CC-1 asked TAYLOR to explain the meaning of several acronyms in the screenshot and asked TAYLOR for "his immigration custom pictures like last time," apparently referring to a prior instance in which TAYLOR provided information to CC-1.[3]

15.     On July 19, 2021, TAYLOR asked CC-2 in a text message, "[C]an you provide me a pic of the guy, last sent? I have one more will sent info later."  The next day, CC-2 responded, "Hey Derrick, I don't think I could assist you anymore cause We're only focusing on Agg Fel during this administration.  Any cases not in that category I might get burn for it. Sorry bro."  Based on my training and experience, I assess that the reference to "focusing on Agg Fel during this administration" refers to efforts by the DHS to prioritize enforcement efforts against those who have committed aggravated felonies and suggests that the queries requested by TAYLOR would subject CC-2 to internal scrutiny at DHS.  After TAYLOR asked for another contact who could help with the inquiry, CC-2 responded, "I wish I could assist more but again I'm too close to retire. Yeah I don't have anyone at this time. Sorry bro."  As noted above, CC-2 recently retired as a DHS agent, and I assess that the

messages summarized above reflect CC-2's understanding that he was engaging in improper conduct by accessing law enforcement databases on behalf of TAYLOR ("Any cases not in that category I might get burn for it.") ("I wish I could assist more but again I'm too close to retire.").

16.     It appears that TAYLOR received information about Dissident 2 from CC-2's access to the PCQS database.   Metadata of other photos from TAYLOR's iCloud account reflect a URL for PCQS photographed from a location that matches CC-2's residence at the time.

*Dissident 3*

17.     The investigation has uncovered electronic communications in which TAYLOR and CC-1 discussed CC-1's request for and receipt from TAYLOR of personal identifying information of Dissident 3 and Dissident 3's daughter (the "Daughter").

18.     In a text string from October and November 2021, CC-1 asked for and received from TAYLOR passport photos for Dissident 3 and the Daughter.   In the text string, CC-1 and TAYLOR engaged in a dispute over when CC-1 should submit payment—upon receipt of the photos or prior to receipt of the photos.   Ultimately, CC-1 paid TAYLOR after receiving the passport photos.   In pertinent part, CC-1 and TAYLOR engaged in the following communications:

| DATE | FROM | COMMUNICATION |
|------|------|---------------|
| 10/27/2021 | CC-1 | Can you get someone passport pictures? |
| 11/10/2021 | CC-1 | A client is willing to pay $800 for two passports numbers. Please let me know if you can help. |
| 11/10/2021 | TAYLOR | What are the full names and information |
| 11/10/2021 | CC-1 | [Provides names and dates of birth of Dissident 3 and Dissident 3's daughter] |
| 11/11/2021 | CC-1 | Client confirmed. Monday is OK. Thanks. |
| 11/12/2021 | CC-1 | Derek, client is willing to pay more if you can get them today. if not, Monday is okay. |
| 11/13/2021 | CC-1 | Please let me know if you can find owner name address |
| 11/13/2021 | TAYLOR | I am with a client, so I will attempt later today What do you want this info for? |
| 11/13/2021 | CC-1 | Locate |
| 11/13/2021 | TAYLOR | What for? |
| 11/13/2021 | CC-1 | Debt collection |
| 11/15/2021 | TAYLOR | Call me when you get a chance |
| 11/15/2021 | CC-1 | [Provides names and dates of birth of Dissident 3 and the Daughter] Same address Father daughter |
| 11/15/2021 | TAYLOR | These date of births do not match in the system! So, understand that It will be tomorrow! The name is different |
| 11/15/2021 | CC-1 | [] is his Chinese name |
| 11/16/2021 | TAYLOR | All documents are ready! |

19.     DHS records reflect that, on November 16, 2021, MILLER ran queries through one or more restricted government databases in the names of Dissident 3 and the Daughter.

20.     Toll records reveal numerous text communications sent between MILLER's cell phone and a phone used by TAYLOR during that period.   For example, there were approximately 70 messages on November 10, 2021, 5 messages on November 14, 2021, 14 messages on November 15, 2021, 195 messages on November 16, 2021, and 29 messages on November 19, 2021.   The timing of these communications correlates with communications

between CC-1 and TAYLOR in which CC-1 asked for the passport information of Dissident 3 and the Daughter, and TAYLOR provided the information to CC-1.

21.     As TAYLOR conveyed the requested information regarding Dissident 3 and the Daughter to CC-1 on November 17, 2021, I assess that the text communications referenced above between TAYLOR and MILLER from November 2021 pertained to MILLER's efforts to obtain information regarding Dissident 3 and Dissident 3's daughter for TAYLOR through a restricted government database.

B.     TAYLOR's Communications with CC-1

22.     Following the conduct set forth above, CC-1 was approached by law enforcement and agreed in April 2022 to make consensually recorded calls to TAYLOR.   On April 7, 2022, while acting under the supervision of law enforcement agents, CC-1 participated in two recorded phone calls with TAYLOR, during which CC-1 stated, in sum and substance, that he had received a subpoena from the U.S. Attorney's Office for the Eastern District of New York that requested CC-1 to appear in Brooklyn, New York and provide documents and information related to passport materials obtained for Dissident 3 and the Daughter.[4]   These calls were initiated after CC-1 sent a text message to TAYLOR asking to speak.

23.     During these recorded calls, CC-1 asked TAYLOR what he should do. TAYLOR informed CC-1, in sum and substance, that he should not provide the documents related to the passport information that TAYLOR had provided to CC-1 and that CC-1 should not tell anyone that CC-1 and TAYLOR were involved in obtaining the passport information for Dissident 3 and the Daughter.   In the same telephone calls, TAYLOR repeatedly told CC-

---

[4]     CC-1 was not actually served with a subpoena but, rather, was making these statements to TAYLOR at the direction of law enforcement.

1, in sum and substance, that TAYLOR could not advise CC-1 or tell CC-1 what to do and that CC-1 should determine for himself how to respond to the subpoena. Additionally, TAYLOR acknowledged that he had illegally received the records for Dissident 3 and the Daughter from an "ICE" (i.e., DHS's Immigration and Customs Enforcement) employee.

24.     During the first call, TAYLOR seemed to grow suspicious of CC-1, asking CC-1 "do you got me on recorder or something?" TAYLOR then suggested to CC-1 that he had only agreed to procure the information about Dissident 3 and the Daughter because of his understanding that it pertained to debt collection. In the second call, TAYLOR suggested to CC-1 that he had agreed to procure the information about the Daughter solely because of CC-1's purported request to assist in a missing child investigation. CC-1 denied to TAYLOR ever suggesting that the request pertained to a missing child investigation.

25.     TAYLOR attempted to obstruct the government's investigation by advising CC-1 not to provide documents to law enforcement, by suggesting to CC-1 false reasons why TAYLOR had agreed to procure information for CC-1, and as set forth below, by falsely stating to law enforcement officers where he had obtained the information about Dissident 3 and the Daughter.

C.     The Law Enforcement Interviews

26.     On April 11, 2022, FBI agents approached TAYLOR in Irvine, California. When the agents administered the candor warning to TAYLOR, they stated in sum and substance that they knew that TAYLOR understood, as a former federal agent, that TAYLOR had to be truthful during the interview with the agents because lying to a federal agent was a crime. TAYLOR acknowledged that he understood. He then indicated, in sum and substance and in part, that he had obtained the passport information about Dissident 3 and

the Daughter that he had provided to CC-1 from a contact who had reportedly found it on the "Black Dark Web."   I assess that TAYLOR was likely referencing the "Dark Web," the World Wide Web content that exists on darknets, that is, overlay networks that use the Internet but require specific software, configurations, or authorization to access.   TAYLOR further indicated that he would not provide the name of his contact.   TAYLOR then acknowledged speaking during the previous week with CC-1 about the passport information at issue. TAYLOR claimed to FBI agents that CC-1 had indicated that the subpoena served upon CC-1 related to a gang in New York.   TAYLOR asked whether the agents were from New York. TAYLOR's statement that he had obtained the passport information about Dissident 3 and the Daughter from a contact who found it on the "Black Dark Web" was false, as TAYLOR received the information from MILLER through MILLER's access to a restricted government database.

27.    On June 17, 2022, FBI agents met with MILLER in Minneapolis, Minnesota.   At the start of the interview, the agents notified MILLER that they were working on an investigation with the U.S. Attorney's Office for the Eastern District of New York. When asked about TAYLOR, MILLER responded that TAYLOR was MILLER's boss from 2009 to 2011 while MILLER was stationed in the Los Angeles area.   MILLER initially claimed that he had not maintained extensive contact with TAYLOR since relocating to Minnesota in 2015 and claimed that TAYLOR had only texted MILLER two times.   After agents reminded MILLER that it is a crime to make a material false statement to a federal officer, MILLER claimed that he and TAYLOR had spoken once in the last six months but did not discuss work matters.   Thereafter, MILLER admitted that TAYLOR had sent

approximately 50 texts in the last six months but claimed that the texts pertained to TAYLOR's "spider."

28.    After agents again administered candor warnings, MILLER admitted that TAYLOR informed him that CC-2 had been assisting TAYLOR with searches but could not continue doing so.    MILLER further stated that TAYLOR sent MILLER five or six names and asked him to run searches on the names.    TAYLOR then called MILLER and explained that he was "working on a missing persons case with the locals."    Agents asked whether any of these names were in MILLER's phone and if he could provide them.    MILLER then looked at his phone, noted that his last contact with TAYLOR was in March, and claimed that the names of the individuals TAYLOR asked him to run were not in the phone.    MILLER further claimed that he told TAYLOR that he could not run the names for TAYLOR because TAYLOR was a private investigator and no longer a government employee.    MILLER then claimed that he ran the names out of curiosity in the PCQS database to see whether it was, in fact, a legitimate missing person's case but never provided the information to TAYLOR. MILLER remembered that the names were all Eastern Asian names.

29.    Agents asked MILLER to look again in his phone to see whether the names were in text messages, and MILLER claimed that they were not.    MILLER noted that the earliest text message was from February—presumably, a reference to February 2022—and that TAYLOR may have relayed the names over the phone, rather than in text messages.    As noted above, toll records reveal that MILLER and TAYLOR communicated extensively via text message in November 2021, around the time that MILLER ran the names of Dissident 3 and the Daughter and provided the results to TAYLOR.

30.     Agents then asked MILLER for consent to search his phone.   MILLER agreed and, after signing a property receipt for his phone, advised agents that he had provided TAYLOR with the individuals' residences, flight records, and photographs.   He further admitted that he photographed the results of his queries on behalf of TAYLOR using his personal phone and texted the images to TAYLOR.   MILLER claimed that all the persons he queried appeared to be visa overstays, who were the types of individuals MILLER would normally detain in his work.   MILLER further acknowledged receiving a gift card to "Wine & Times" from TAYLOR with a note stating "Thanks for all the help."

31.     After concluding the interview with MILLER, agents began to review the phone but were unable to locate any text messages between MILLER and TAYLOR. They then called MILLER and asked him if he had been reading from such text messages in his phone during the interview earlier that day.   MILLER confirmed that he had been and that the messages were normal text messages saved under the name "Derrik."   MILLER expressed surprise that the messages were not in the phone.

32.     Agents then provided another candor warning and asked MILLER if he had deleted the messages.   MILLER stated, "I did it."   MILLER then admitted to deleting the messages from his phone during the interview earlier that day after the agents asked whether the names that TAYLOR provided were in the text message thread that MILLER had indicated was in his phone.   MILLER further stated that he did not know if the names were in the text message thread because he simply deleted the entire text string.   He claimed that he had done so because he was mad at himself for having run the searches.   MILLER stated that the only thing he deleted from the phone was the text string with TAYLOR.   MILLER further

estimated that the gift card he received from TAYLOR was worth $100 but stated that he did not have the card anymore and would look for the letter from TAYLOR that accompanied it.

WHEREFORE, your deponent respectfully requests that the defendants CRAIG MILLER and DERRICK TAYLOR be dealt with according to law.

EDWARD TAM
Special Agent
Federal Bureau of Investigation

Sworn to before me this
22nd day of June, 2022

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

<table>
<tr><td>United States of America<br>v.<br>CRAIG MILLER</td><td>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No. 22-MJ-665</td></tr>
<tr><td style="text-align:center">*Defendant*</td><td></td><td></td></tr>
</table>

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    CRAIG MILLER                                                                ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment          ☐ Superseding Indictment          ☐ Information          ☐ Superseding Information          ☑ Complaint
☐ Probation Violation Petition          ☐ Supervised Release Violation Petition          ☐ Violation Notice          ☐ Order of the Court

This offense is briefly described as follows:

  Title 18, United States Code, Section 1512(c)(1) (obstruction of justice)

Date:      06/22/2022

*Issuing officer's signature*

City and state:     Brooklyn, New York

The Honorable Cheryl L. Pollak
*Printed name and title*

| Return |
|--------|

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____
at *(city and state)* _____ .

Date: _____

*Arresting officer's signature*

_____
*Printed name and title*

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____     Weight: _____

Sex: _____     Race: _____

Hair: _____     Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| DERRICK TAYLOR | ) | Case No.  22-MJ-665 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    DERRICK TAYLOR                                                                                      ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment          ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

Title 18, United States Code, Section 1512(c)(2) (obstruction of justice)
Title 18, United States Code, Section 1001(a)(2) (false statements)

Date:      06/22/2022

*Cheryl L. Pollak*

*Issuing officer's signature*

City and state:     Brooklyn, New York

The Honorable Cheryl L. Pollak

*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
| at *(city and state)* _____ . |
| |
| Date: _____            _____ |
|                                          *Arresting officer's signature* |
| |
|                                          _____ |
|                                          *Printed name and title* |

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____    Weight: _____

Sex: _____    Race: _____

Hair: _____    Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____