UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :   22-CR-311 (ER)
        v.                   :
                            :   July 29, 2022
DERRICK TAYLOR,              :
                            :   Brooklyn, New York
            Defendant.       :
                            :
----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          BREON PEACE, ESQ.
                            U.S. ATTORNEY
                            BY: ALEXANDER SOLOMON, ESQ.
                            ASSISTANT U.S. ATTORNEY
                            271 Cadman Plaza East
                            Brooklyn, New York  11201


For the Defendant:          SABRINA SHROFF, ESQ.
                            44 Gramercy Park North, #7A
                            New York, NY 10010


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            274 Hovey Road
                            Milo, ME 04463
                            Aria@leinen.net




Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Criminal cause for arraignment

2     on the indictment, U.S.A. v. Derrick Taylor, case

3     number 22-CR-311.  We do have the government and the

4     defendant on the phone.

5          First of all, may I have the parties state

6     their name for the record.  For the government, who is

7     on the phone?

8          MR. SOLOMON:  Good afternoon, this is Alex

9     Solomon for the government.

10          THE CLERK:  Thank you.

11          May I have Mr. Taylor state your name for

12     the record, who is also on the phone?

13          THE DEFENDANT:  Yes.  Good afternoon, my

14     name is Derrick Taylor.

15          THE CLERK:  Thank you, Mr. Taylor.

16          And defense counsel, who is present in

17     court.

18          MS. SHROFF:  Good afternoon, your Honor.  On

19     behalf of Mr. Taylor, who is appearing remotely for

20     this proceeding, Sabrina Shroff.

21          THE CLERK:  Thank you.

22          Okay, Judge.

23          THE COURT:  Good afternoon, everyone.  I'm

24     looking at the -- hold on a second.  I'm looking at the

25     indictment and I'm trying to find the count on which

1  the defendant was indicted.

2           Mr. Solomon, which count was it?

3           MR. SOLOMON:  Your Honor, I believe it's the

4  latter counts.  It should be Counts 4 and 5 if I've got

5  that right.

6           THE COURT:  Obstruction of justice?

7           MR. SOLOMON:  Obstruction of justice and

8  false statements.

9           THE COURT:  All right, I apologize.  I just

10  got a copy of the indictment.

11           MR. SOLOMON:  Sure.

12           THE COURT:  All right.  Mr. Taylor, can you

13  hear me?

14           THE DEFENDANT:  Yes, I can, your Honor.

15           THE COURT:  You're not present today.  Is

16  your presence in the courtroom being waived?  Is your

17  in-person appearance --

18           THE DEFENDANT:  Yes.

19           THE COURT:  Ms. Shroff?

20           MS. SHROFF:  Yes, your Honor.  I discussed

21  with Mr. Taylor the fact that he lives in California.

22  It would be a hardship on him to travel for this

23  proceeding, especially in light of the ongoing Covid

24  issues.  He waives his right to a personal appearance

25  and requests that the Court allow him to be present by

 1  telephone.

 2          THE COURT:  Okay.  Mr. Taylor, is that what

 3  you want to do?

 4          THE DEFENDANT:  Yes, your Honor.

 5          THE COURT:  Okay.  The purpose of the

 6  proceeding today is to make sure you understand your

 7  rights and what you're charged with, and to determine

 8  whether you should be released on bail or you should

 9  remain on bail, where you've been released after your

10  initial appearance in California, or whether you should

11  be held in jail.

12          You have the right to remain silent.  You're

13  not required to make a statement.  If you make a

14  statement -- if you've made a statement, you don't need

15  to make any more.  If you start to make a statement,

16  you can stop at any time.  Any statements you do make

17  can be used against you.  You have the right to an

18  attorney.  If you can't afford one, an attorney will be

19  appointed for you.

20          I don't see an affidavit -- a financial

21  affidavit.

22          MS. SHROFF:  That's correct, your Honor.

23  Mr. Taylor was initially presented in the Central

24  District of California.  He filled out a financial

25  affidavit in that district.  The Federal Defenders of

1  the Middle District of California, Mr. Cross, was

2  appointed to represent him, which is why we did not

3  fill out a second financial affidavit here.

4          THE COURT:  All right.

5          MS. SHROFF:  Should the Court want me to,

6  I'm happy to do that at a later time.

7          THE COURT:  Since Mr. Taylor was found to be

8  eligible for a court-appointed lawyer in California, I

9  will assume that it's also the same case here.  If it

10  turns out that it's something different, I would ask,

11  Ms. Shroff, for you to notify the Court.

12          MS. SHROFF:  Yes, your Honor.

13          THE COURT:  Mr. Taylor, you've been charged

14  by a grand jury in an indictment with attempt to

15  obstruct justice, obstruction of justice, and making a

16  false statement.  Did you get a copy of the indictment?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Did you have a chance to talk to

19  your lawyer about it?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand what you're

22  being charged with?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you want me to read the

25  charges out loud or do you waive a public reading?

1          MS. SHROFF:  Your Honor, Mr. Taylor would

2     waive the public reading.

3          THE COURT:  How do you plead to the charges,

4     Mr. Taylor, guilty or not guilty?

5          THE DEFENDANT:  Not guilty.

6          THE COURT:  All right, thank you.

7          Were the Rule 5(f) -- was that statement

8     read in California?

9          MS. SHROFF:  I believe it was read, your

10    Honor.  Additionally, it was filed on the docket, I

11    believe when a codefendant, Mr. Lu (ph), was arraigned

12    last week.  I have reviewed that filing with Mr.

13    Taylor.  If the Court wants to review it again, that's

14    fine, but it need not should it not wish to.

15         THE COURT:  Okay.  It's mostly for the

16    government.  Well, it's a different governmental lawyer

17    so I think out of an abundance of caution, I'll read it

18    again since it's a different U.S. Attorney's Office.

19         Pursuant to Federal Rule of Criminal

20    Procedure 5(f), I remind the prosecution of its

21    obligation under Brady v. Maryland and its progeny to

22    disclose to the defense all information, whether

23    admissible or not, that is favorable to the defendant,

24    material either to guilt or to punishment, and known to

25    the prosecution.  The prosecution must make good-faith

efforts to disclose such information to the defense as
soon as reasonably possible.  I'll be entering a
written order that more fully describes this obligation
and the possible consequences of failing to meet it,
and I direct the prosecution to review and comply with
that order.

MR. Solomon, does the prosecution confirm
that it understands its obligations and will fulfil
them?

MR. SOLOMON:  Your Honor, we so confirm.

THE COURT:  All right, thank you.

How should we be proceeding today, Ms.
Shroff?

MS. SHROFF:  As far as the defense is
concerned, your Honor, I think we're done, but I
believe Mr. Solomon would oppose that request.

THE COURT:  Okay.  Mr. Solomon, let me hear
from you.

MR. SOLOMON:  Yes, your Honor.  As was
noted, Mr. Taylor made an initial appearance in the
District of California.  That was pursuant to a
criminal complaint.  He was released on an unsecured
$25,000 bond and one of the conditions or conditions
missing was that he had to surrender his firearm or
firearms.  From our perspective that was missing, so

1  we're asking the Court to modify the conditions of his

2  release to raise the amount of the bond to $100,000.

3  This is commensurate with what the codefendants in the

4  indicted case have been released on.  In two cases, the

5  bond amounts are much higher; they're half a million

6  dollars.  And secondly, to order him to surrender his

7  firearms.

8             THE COURT:  All right.  Ms. Shroff, let me

9  hear from you.

10             MS. SHROFF:  Your Honor, I briefed this

11  matter for the Court and I set forth for the Court's

12  perusal why it need not concern itself with what bail

13  conditions were set for other defendants in this

14  matter, nor should the Court be moved by the fact that

15  another codefendant, Mr. Miller, was required to

16  surrender his guns.  My client Mr. Taylor is very

17  differently situated even if the Court were to assume

18  that bail should not be individualized and the concerns

19  should be sort of informed by what the defendants have

20  been given as their conditions of release.

21             So if I may just start very briefly, I had

22  asked the government and I requested not having to

23  proceed on this hearing without the Court having the

24  benefit of the transcript in California.  The reason I

25  did that is because I had conferred in great detail

with Assistant Federal Public Defender Samuel Cross in

the district, who had informed me of the following

facts:

One, that present during that proceeding

were two Assistant United States Attorneys.  To inform

Magistrate Judge McCormick in California, present was

Ms. Emily Dean as well as the prosecutor from

California.  Whether or not Mr. Taylor was brought

before the Court on an indictment or a complaint isn't

necessarily more informative than what the Court was

told.  So the Court was told about exactly and

precisely these charges, and the Court was told and

asked specifically to impose a higher bond amount, and

the government sought a gun condition to be imposed.

I bring this up because it is not proper for

the government to rely on United States v. Salvador

because Salvador is factually and in dicta not

similarly situated.  In Salvador, the judge, now

District Court Judge Brown specifically noted in his

statement of detention that the reason he could not

make the call between release and detention is because

the prosecutors in the courtroom could not inform him

about the facts that he needed.

The issue in that case was whether or not

the photographs that were found on that defendant's

phone were of such a nature that it would lean the court to impose detention or release. Such was not the case for Mr. Taylor. The government was fully able to give the magistrate judge all of the pertinent information. In fact, the judge actually asked the government, why in God's name are you asking for a higher dollar amount and why would you want to take this man's gun away because the guns are not related to pleasure, he's not charged with a violent felony. In fact, he's not charged with any crime of violence that would implicate either bail or sentence. He is charged with counts that have nothing to do with any violent conduct.

The government argued for these conditions and the magistrate judge overruled them. So of course, it's fair for them to come to you. You're a magistrate sitting in the receiving or the charging district. But frankly, this court is not given any more facts than the magistrate judge there. The magistrate judge there knew that there was evidence and that he would be indicted, and that Mr. Taylor had no criminal history, was lawfully employed, and his employment actually requires him to have these registered, licensed guns.

Now, Mr. Solomon takes great pains to tell this Court that, you know, Mr. Miller lost the right to

have his gun, but Mr. Miller is an ICE agent.  He's

employed by the Department of Homeland Security.  The

gun doesn't belong to him, the gun belongs to ICE.  He

has no right to have a gun anymore because he's

arrested and he's suspended from his job.

          Mr. Taylor is not suspended from his job.

Mr. Taylor is very properly employed.  Mr. Taylor is

compliant with his conditions of release.  And most

importantly, the supervising district that is

supervising Mr. Taylor now, who works in conjunction

with Mr. Long from Pretrial Services in New York and

who is present in court today, checked with the

Pretrial Services officer in California, and the

Pretrial Services officer in California expressed no

concern whatsoever about Mr. Taylor continuing to have

a weapon for his work.

          And if the Court would just indulge me for

one moment, I could tell you that the Pretrial Services

officer there, who name is Teddy Cha, C-h-a, has

informed -- and I thank Mr. Long for sending me this

email, which says, so it looks like we initially

recommended a no-firearms condition but the Court did

not determine that condition to be necessary.  After

the initial assessment of the case and home inspection,

I am okay with the conditions set and with the

defendant remaining to have his registered firearms
locked away at his residence.  There does not appear to
be any concern at this time but if anything does come
up, we will let you know right away.  Please do not
hesitate to ask us if you have any other questions.

Mr. Taylor is employed.  His employment
depends -- he's employed both as a service processor
and as an investigator.  For both of these, he requires
a registered firearm, which is kept and maintained
safely and he complies with all the rules.  To take
that away from him essentially would leave him
unemployed, and it would really impact his ability to
litigate and fight this case because a person without a
job is simply an idle mind waiting away to rot.

This defendant is not similarly situated to
Craig Miller.  This defendant is not similar situated
to any of the other defendants.  There is absolutely no
reason to change the bail conditions, and we ask the
Court not to do so.  Thank you.

THE COURT:  So for Mr. Taylor's employment,
is it that he has to carry the gun or that as long as
it's in his possession but it could be locked away,
that would be okay?

MS. SHROFF:  Actually, I did discuss exactly
that with Mr. Taylor.  I am told that when he is hired

1   for a specific job, depending on the nature of the job,

2   it is only then that he uses these registered firearms.

3   So for example, if he's hired to do a specific type of

4   investigation where there is some indication of danger

5   or heightened is when he uses -- uses or carries -- not

6   uses, carries with him the firearm in concern.  Other

7   than that, he does not use it.  So when he goes to the

8   office every day, he has informed me that he has a safe

9   in which they're locked and they remain locked.

10          I'm very comfortable, if the Court has

11  questions to pose directly to Mr. Taylor, to allowing

12  him to answer them.  But Mr. Taylor can also correct me

13  that each one of these weapons is locked in a safe, and

14  I made sure that Pretrial Services in California had

15  done home visits.  I also made sure that his wife had

16  spoken with Mr. Long and Mr. Taylor himself has reached

17  out to Mr. Long so that there is supervision on all

18  coasts.  Mr. Long of course is present in court today

19  to confirm.

20          THE COURT:  Because what I heard you quote

21  from Teddy Cha from Pretrial Services in California is

22  that Pretrial Services is okay with the gun as long as

23  it is locked away.  So if your client is carrying the

24  gun, that is no longer what Pretrial Services in

25  California is saying they're okay with.

1          MS. SHROFF:  I'm sorry, I did not quite read

2     it that way, your Honor, I apologize.  I read it to say

3     that they're okay if he needs it for work.

4          THE COURT:  Well, read it to me again

5     because that's what I wrote down.

6          MS. SHROFF:  Your Honor, I don't know the

7     question that was posed to Pretrial.

8          THE COURT:  Just read the answer.

9          MS. SHROFF:  Okay.  The answer is, "I'm okay

10    with the conditions set and the defendant remaining to

11    have his registered firearms locked away at his

12    residence."

13         THE COURT:  So they are okay with it being

14    locked away.

15         Yes, Mr. Long.

16         OFFICER LONG:  Your Honor, if I could just

17    interject because the question was posed specifically

18    by me to my coworker, as opposed to this work-around.

19    Essentially, what I asked was, as the supervising

20    district, were they okay with Mr. Taylor being in

21    possession of his firearms?  It did not make sense for

22    Pretrial in EDNY to argue against something if the

23    supervising district was okay with it.  So the response

24    is, "After initial assessment of the case and home

25    inspection, I am okay with the conditions set, which is

essentially the idea he is allowed to keep in

possession of his weapons and with the defendant

remaining to have his registered firearms locked away

in his residence."

I would -- I guess I would have to discern

from that if he's keeping his registered firearms, the

question was allowing him to have the firearm for work

purposes, not just to have them.

THE COURT:  Well, I know that in this

district, when somebody is in lawful possession of a

firearm, they are -- it is standard to say that you may

not possess a firearm.

OFFICER LONG:  Correct.

THE COURT:  So in those cases, that firearm

needs to be surrendered.

OFFICER LONG:  Correct.

THE COURT:  But if there were a situation

where somebody could keep the firearm in his residence

in a locked safe and not surrender it, and if that's

what everybody thinks would be okay, then the thing

that would be different is that the defendant is not

surrendering it.  He can keep it but whether he can

carry it is a different issue, so that's the part I was

unclear about.  Did you read what your colleague wrote

to me, that the supervising Pretrial Services office is

okay with the defendant keeping the gun locked away and
also carrying it when he has a job that either requires
him to carry it or that he would use it for work?

OFFICER LONG:  I understand, your Honor.  In
our district, when a defendant has a registered
firearm, it is actually rare for that defendant to
maintain that firearm for work purposes.

THE COURT:  Right.

OFFICER LONG:  Now, when they have it
personally as a registered firearm, since there is no
immediate need to keep that, that's when you have them
surrender it to the police department or another
registered owner.  This is an instance where the
defendant is indicating that he needs it for work.

The question that came up in California was
specifically to retain it for work purposes, so I have
to infer that if they're okay with it, since this
conversation originated under the premise of him
keeping it for employment purposes, I would have to
read into it that they are okay with him keeping it for
employment purposes, which means carrying it for work.

THE COURT:  Okay, I see.

OFFICER LONG:  That's again just an
inference because the original question was him keeping
it for work when he was brought before the magistrate

1  in California.

2  THE COURT:  Okay, thank you.  This can also

3  be a geographic, cultural difference that in New York,

4  we're very, very strict about people not carrying guns,

5  where --

6  OFFICER LONG:  I specifically think this

7  issue -- it actually comes out more to an employment

8  situation.  In my time here, I cannot recall any

9  instance where we had a defendant who was permitted to

10 carry their firearm for work purposes.

11 THE COURT:  I see.

12 OFFICER LONG:  Generally, those who have a

13 registered firearm, they usually have a hold permit.

14 THE COURT:  Right.

15 OFFICER LONG:  And if the defendant was

16 using it for employment, most likely, that person was

17 suspended as in the other case that we're talking

18 about, Craig Miller, because they had a firearm due to

19 employment.

20 THE COURT:  Right.

21 OFFICER LONG:  I think this is one of those

22 aberration cases where it coincides.

23 THE COURT:  I see, all right, thank you very

24 much.

25 Mr. Solomon, can you tell me if you have a

specific concern about Mr. Taylor having a firearm for
work purposes?

        MR. SOLOMON:  Yes, and if I could also
address several of the issues that Ms. Shroff raised.
First of all, our concern is, Ms. Shroff is saying that
this defendant needs his firearm for work or he'll be
unemployed.  By the same token, she was also saying
that it's only certain types of jobs that he would need
to carry his weapon.  That's the first item.  The
second item is, as alleged in the criminal complaint,
there were efforts to tamper with a potential witness
in this case.  We do have a credible concern about an
indicted defendant -- and in my fifteen years in this
district, I've never seen an indicted defendant allowed
to possess a firearm while on pretrial release.

        THE COURT:  Even for work?

        MR. SOLOMON:  There's a credible concern
about --

        THE COURT:  Mr. Solomon?

        MR. SOLOMON:  Excuse me?

        THE COURT:  For work purposes?  I think that
is the unusual aspect of it that Mr. Long brought up.

        MR. SOLOMON:  Yes, but I also dispute
whether this defendant needs a firearm for work.  If he
has to relinquish certain jobs for work, that is not

being unemployed.  And further, if this defendant is
convicted of these charges -- and the evidence we
outlined in our letter is very strong and includes
recorded conversations, and he also made false
statements to a law enforcement officer, which are
easily provable as false.  Our concern is that he does
not need a firearm for work.  He's going to have to
relinquish the weapon once he's convicted and he's
going to have to figure out how to be a private
investigator without having a firearm for the rest of
his life.

Just turning briefly to the issue of the
amount of the bond, it's our position that $25,000 is
simply not enough moral suasion to keep this defendant
appearing in court.  If he's convicted on both charges,
he's facing up to 25 years in prison.  The potential
financial penalty of $25,000 is not enough to keep him
coming out here.

THE COURT:  Okay.  Do you have anything
specific -- any specific concern about Mr. Taylor
carrying a gun, any kind of violent behavior you're
concerned about?

MR. SOLOMON:  As I outlined, we have a
specific concern that he has attempted to tamper with
the witness, and the witness is actually quite scared

1  of future contact from Mr. Taylor.  So we would object

2  vigorously to him being allowed to retain a weapon and

3  if your Honor decides he's allowed to continue having a

4  weapon, we would probably appeal this issue to the

5  district judge.

6          THE COURT:  Okay, all right.  Ms. Shroff,

7  what did you want to say?

8          MS. SHROFF:  Thank you.  May I just respond

9  briefly?  First of all, there is not any credible

10  threat of violence whatsoever because if there were,

11  Mr. Solomon would have been able to give you a specific

12  example.  None exists and Mr. Solomon clearly knows

13  this.  Mr. Solomon is of course free to appeal, as am

14  I.  So the fact that he would appeal, that's fine.  We

15  are all playing for the NFL here so we can all go

16  appeal.  I don't think that's actually an issue at all

17  before this Court.

18          More importantly, your Honor, this man has

19  been out on bail with these conditions for a month.  If

20  ever this man wanted to tamper with someone, take a gun

21  and act inappropriately, that's when he would have done

22  it.  He has the guns.  They're in his home right now.

23  According to Mr. Solomon, this is such a big concern

24  for him that he did nothing about this for a whole

25  month.  There is no concern here.  Mr. Taylor is

properly employed, as the magistrate judge found in

California.  He has zero history of violence.  Not only

has he no history of violence, he has no criminal

history whatsoever.  This is a sixty-year-old man.

We're not talking about somebody who is 25 years old,

whose brain is not fully developed.  The fact that he

may or may not get convicted is for a future date.

That is not the issue now.  The question is whether or

not bail is proper now.

But most importantly, your Honor, think

about all of the objective people who have told you

that this is not a concern to Pretrial Services

officers, in magistrate court in California, and of

course my arguments to you.  This is not a bond of

moral suasion.  It's not a $25,000 moral suasion bond,

it is a $25,000 personal recognizance bond.  It is not

a suasion bond.

Mr. Taylor is sixty years old.  There was no

risk of flight, there was no danger, and not one but

two Assistant U.S. Attorneys appeared in court in

California to tell another magistrate exactly what

they're telling you.  Mr. Solomon, I'm happy to go with

him to an appeal, but I do believe very firmly that

these bail conditions are the least-restrictive ones

that are to be imposed under the Bail Reform Act

because this is a presumption for release case.  This
is not a presumption for detention.  Thank you.

THE COURT:  All right, thank you.

The issue of the guns first.  I am persuaded
that Mr. Taylor needs the guns for specific jobs for
work, so I will allow him to have the guns for that
purpose and that purpose only.  I've been told that he
is not -- he doesn't need it for every job so what I
would like to impose as a further -- just as a
condition on this is that he's going to have the guns
in his possession only for work, and I would like him
to tell the Pretrial Services officer whenever he has a
job that requires him to carry the gun.

That way, people can keep track of when he's
using the gun for legitimate purposes versus any
potential illegitimate purpose.  And if he's just
carrying the gun around because he's going out at night
or whatever it is that's not work-related, then that
would be a violation.  So I'm going to limit his use --
I'm going to allow him to have the gun but limit the
use to strictly as necessary for work, all right?  So
that will be my modification to the gun possession.

As far as the dollar amount, my
understanding is that there are no additional suretors,
it's just Mr. Taylor himself.  I do think $25,000 is

low for persuading somebody to fly across the country
every time he has a court date and make sure that he's
here, including for trial, so I am going to raise it to
$100,000.  He doesn't have to pay it if he complies
with all of the conditions.  But if he fails any of
these conditions, then he is at risk of having to pay
that.  And I think that is an important incentive for
him to comply with all the conditions, so that's what
I'll do.

I'll reiterate that he must stay away from
all codefendants, victims, and witnesses in this case,
except in the presence of counsel.  My understanding is
that the passport has been surrendered, and Mr. Taylor
may not have any further travel documents.  Mr. Taylor
must stay within the Central District of California and
then can travel to New York City and Long Island so
that he can face the charges here.  He must report to
Pretrial Services and be supervised by them as they
direct.  In addition, he must show up for all of his
court appearances.  Failure to appear for any court
appearance as directed may also result in a bench
warrant being issued for his arrest.

Mr. Taylor, if you violate any of these
terms of release, not only would you have your bond
revoked and you could be held in jail pending your

1  trial, but then you'll also be on the hook to the
2  government for $100,000.
3          Mr. Taylor, do you understand these
4  conditions?
5          THE DEFENDANT:  Yes, I do, your Honor.
6          THE COURT:  Do you agree to abide by them?
7          THE DEFENDANT:  Yes, I do, your Honor.
8          THE COURT:  Ms. Shroff, since you're here,
9  do you want to sign on behalf of your client that he
10  understands the conditions?
11          MS. SHROFF:  Sure.
12          Mr. Taylor, I have your permission to sign
13  for you, correct?
14          THE DEFENDANT:  Yes, you do.
15          THE COURT:  One last condition I forgot to
16  mention.  A standard condition, Mr. Taylor, is you may
17  not commit any crimes while you're on release, no
18  state, local, or federal crimes.  Understood?
19          THE DEFENDANT:  Yes, your Honor.
20          THE COURT:  Thank you, everyone.
21          Is there anything further from the
22  government?
23          MR. SOLOMON:  No, thank you, your Honor.
24          THE COURT:  Ms. Shroff, anything further for
25  the defendant?

1          MS. SHROFF:  No, thank you, your Honor.

2          THE COURT:  All right, thank you.

3          Thank you, Mr. Taylor.

4          THE DEFENDANT:  Thank you, your Honor.

5                    *  *  *  *  *  *  *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct

19 transcript from the electronic sound recording of the

20 proceedings in the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON                    August 11, 2022