1

1        UNITED STATES DISTRICT COURT

2      EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3    UNITED STATES OF AMERICA,
                                    Case No. 1:22-cr-00311-LDH-1
4              Plaintiff,

5    v.                             Brooklyn, New York
                                    March 16, 2022
6    FAN LIU, a/k/a Frank Liu,      4:08 p.m.

7              Defendant.

8
                TRANSCRIPT OF ARRAIGNMENT HEARING
9           BEFORE THE HONORABLE JAMES R. CHO
               UNITED STATES MAGISTRATE JUDGE
10

     APPEARANCES:
11   For the Plaintiff:            Emily Dean, Esq.
                                   Douglas Pravda, Esq.
12                                 U.S. Attorney's Office
                                   271-A Cadman Plaza East
13                                 Brooklyn, NY 11201

14   For the Defendant:           Edgar L. Fankbonner, Esq.
                                   Goldberger & Dubin, PC
15                                 401 Broadway,
                                   Suite 306
16                                 New York, NY 10013

17   Also Appearing:              Lisa Lu, Mandarin interpreter

18   Clerk:                       Sui May Yuen

19   Court Recorder:              Electronic Sound Recording

20   Transcription Service:       Chris Hwang
                                   Abba Reporting
21                                 PO Box 223282
                                   Chantilly, Virginia  20153
22                                 (518) 302-6772

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

25

1          (Call to order at 4:08 p.m.)

2               THE CLERK:  Okay, this is a criminal cause for

3     arraignment on the complaint, USA v. Fan Liu.  The case number

4     is 22-257-M.  May I have the parties state their name for the

5     record?

6               For the Government, please?

7               MS. DEAN:  Good afternoon, Your Honor, Emily Dean and

8     Douglas Pravda for the Government.

9               MR. FANKBONNER:  Good afternoon, Your Honor, for Mr.

10    Liu, Edgar Fankbonner of the firm of Goldberger & Dubin.

11              THE COURT:  All right, good afternoon, everyone.

12              Sui May?

13              THE CLERK:  Yes.

14              THE COURT:  Quick question.

15              THE CLERK:  Yes.

16         (The Judge confers with the Clerk)

17              THE COURT:  All right, Mr. Liu.  Good afternoon.  How

18    are you?

19              THE DEFENDANT:  Good.

20              THE COURT:  Pull the microphone closer to you, so you

21    can speak into the microphone.  Just to confirm, do you speak

22    and understand English?

23              THE DEFENDANT:  Understand, but not very well.

24              THE COURT:  Okay.  All right, do we need a Chinese

25    interpreter?

1          MR. FANKBONNER:  I don't believe so, Your Honor.

2     Thank you.

3          THE COURT:  Okay.  And feel free to remain seated

4     throughout the proceeding.  Thank you.

5          All right, Mr. Liu, let me explain to you what's

6     going to happen this afternoon.  The purpose of today's

7     proceeding is to make sure you understand your rights, what

8     you've been charged with, and to determine whether you should

9     be released on bail or held in jail.  Do you understand?

10          MR. FANKBONNER:  You have to say yes or no.

11          THE DEFENDANT:  Yes.

12          THE COURT:  Okay, again, if at any point in time you

13     don't understand what's going on today, you can consult with

14     your attorney, okay?

15          THE DEFENDANT:  Thank you.

16          THE COURT:  All right, I want to remind you, you have

17     the right to remain silent.  You need not say anything.  You're

18     not required to make any statement at all.

19          If you've made a statement in the past, you need not

20     say anything further.  If you start to make a statement in the

21     future, you can stop at any time.

22          And if you make any statement, that may be used

23     against you.  Do you understand that?

24       (Counsel confers with the Defendant)

25          THE DEFENDANT:  Yes.

1      THE COURT:  All right, other than English, what

2  languages do you speak?

3      THE DEFENDANT:  Mandarin.

4      THE COURT:  Okay.  All right, so your attorney's

5  confident that he understands English well enough to proceed

6  today?

7      MR. FANKBONNER:  Despite the appearance in the past

8  few moments, Your Honor, yes.  I had an extensive conference

9  with him previously and he's been a citizen for many years, so

10  I believe he does.

11      THE COURT:  Okay, again, Mr. Liu, if at any point in

12  time you think you need a translator, let us know, okay?

13      (Counsel confers with the Defendant)

14      THE DEFENDANT:  Yes.

15      THE COURT:  Mr. Liu, Mr. Liu, the most important

16  thing is that you understand what's going on today, okay?

17      THE DEFENDANT:  Understand going on, yeah.

18      THE COURT:  So I will speak slowly.  If you need more

19  time to talk to your attorney, that's fine, but I want to make

20  sure that you understand what's happening today, okay?

21      THE DEFENDANT:  Yeah, I understand, yeah.

22      THE COURT:  Okay.

23      THE DEFENDANT:  I need time talk to lawyer, yeah.

24      MR. FANKBONNER:  I'm so sorry, Your Honor.

25      THE COURT:  Take your time.  Go ahead.

1          (Counsel confers with the Defendant)

2               MR. FANKBONNER:  My client has requested the Mandarin

3     interpreter, Your Honor.  I'm sorry, but he would prefer one.

4               THE COURT:  Okay, that's fine, that's fine.  Let's go

5     off the record for a minute.

6               THE CLERK:  Yes, Judge.  I think we do have --

7          (Recess taken at 4:12 p.m., recommencing at 4:15 p.m.)

8               THE CLERK:  Judge, wait hold on, is it blinking now?

9     Okay, Judge, we're back on the record.  And now we have the

10    Mandarin interpreter of Lisa Lu, right?

11              THE INTEPRETER:  Yes, yes, correct.

12              THE CLERK:  And you previously sworn or are you new?

13              THE INTEPRETER:  L-U.

14              THE CLERK:  I'm sorry.

15              THE INTEPRETER:  What did you say?

16              THE CLERK:  Are you certified for our Court because I

17    don't think I ever met you before.  That's why.  Anyway --

18              THE INTEPRETER:  Well, yes, I have been work this

19    Court before.

20              THE CLERK:  Oh.  Okay, so you're previously sworn.

21    Can you just state your name for the record, please?

22              THE INTEPRETER:  Yeah, sure.

23              THE CLERK:  Thank you.

24              THE INTEPRETER:  Lisa Lu, Mandarin Chinese.

25              THE CLERK:  Very good.  Thank you very much.

1          Okay, Judge.

2               THE COURT:  All right, thank you, everyone.

3               Madam Interpreter, make sure you speak into the

4     microphone at the appropriate times, okay?

5               THE INTEPRETER:  Okay, sure.

6               THE COURT:  All right, so why don't we start from the

7     top one more time, all right, now that we have an Mandarin

8     interpreter here in the courtroom with us?

9               Mr. Liu, the purpose of today's proceeding is to make

10    sure you understand your rights, what you've been charged with,

11    and to determine whether you should be released on bail or held

12    in jail.

13              I want to remind you, you have the right to remain

14    silent.  You're not required to make any statement at all.  If

15    you've made a statement, you need not say anything more.  If

16    you start to make a statement in the future, you can stop at

17    any time.  Anything you may be used against you.  Do you

18    understand that?

19              THE DEFENDANT (through interpreter):  Yes, I

20    understand.

21              THE COURT:  Okay, you also have the right to an

22    attorney.  And if you can't afford, one, one will be appointed

23    for you.  Do you understand?

24              THE DEFENDANT:  I have my own lawyer.  I have my own

25    attorney.

1          THE COURT:  Okay, and your attorney's seated next to

2     you, correct?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right, now Mr. Liu, you have been

5     charged in the complaint with the following charges.  One,

6     conspiring to act in the United States as agents of a foreign

7     Government.

8          Two, conspiring to travel in interstate and foreign

9     commerce with the intent to harass and intimidate one or more

10    persons.

11         Number three, transferred, possessed, and used

12    without lawful authority and in and affecting interstate

13    commerce and foreign commerce one or more means of

14    identification of another person.

15         And finally, four, conspired to commit an offense

16    against the United States.

17         Now, Mr. Liu, have you received a copy of the

18    complaint or has your attorney read it to you?

19         THE DEFENDANT:  Yes, I saw it.

20         THE COURT:  Okay, now Mr. Liu, have you had a chance

21    to consult with your attorney about the charges against you?

22         THE DEFENDANT:  We didn't have enough time to discuss

23    the content.

24         THE COURT:  Okay, Mr. Fankbonner, are you confident

25    that your client understands the charges him?

1          MR. FANKBONNER:  Yes, Your Honor.

2          THE COURT:  Okay, Mr. Liu, do you understand the

3    charges against you?

4          THE DEFENDANT:  I understand it, but I denied all the

5    allegations.

6          THE COURT:  Understood.  Now Mr. Liu, you have the

7    right to a preliminary hearing within 30 days.

8          Mr. Fankbonner, does your client have a position on a

9    preliminary hearing?

10         MR. FANKBONNER:  Your Honor, he would waive the

11   preliminary hearing because I believe we've arrived at

12   something close to a resolution on bond.

13         THE COURT:  Okay, understood.

14         All right, let me turn to the Government.  Now

15   pursuant to Federal Rule of Criminal Procedure 5(f), I remind

16   the Government of its obligation under Brady v. Maryland and

17   its progeny to disclose to the Defense all information known to

18   the Government whether admissible or not that is favorable to

19   the Defendant and material either to guilt or to punishment.

20   The Government must make good faith efforts to disclose such

21   information to the Defense as soon as reasonably possible.

22         I'll enter a written order more fully describing this

23   obligation and the possible consequences of failing to meet it.

24   And I direct the Government to review and comply with that

25   order.  Does the Government confirm that it understands its

1    obligations and will fulfill them?

2              MS. DEAN:  I understand the obligations and I will

3    fulfill them.

4              THE COURT:  All right, Mr. Fankbonner, is your client

5    a U.S. citizen?

6              MR. FANKBONNER:  Yes, he is, Your Honor.

7              THE COURT:  Okay.  All right, I understand there's a

8    proposed bail package.

9              Ms. Dean, do you want to put the terms of the bail

10   package on the record?

11             MS. DEAN:  Thank you, Your Honor, yes.  We are close

12   on a proposed bail package.  There are two disagreements.  So I

13   will start with everything that we've agreed on, which is a

14   bail package of $1,000,000 bond with the attachment of Mr.

15   Liu's two properties, one which is in Jericho, New York and the

16   second which is in Florida.

17             The next condition we've agreed on is electronic

18   monitoring with a curfew, that the Defendant cannot go to or

19   into or around any PRC establishments including the PRC

20   consulate, that his travel be limited to the Southern District

21   and the Eastern District of New York during the time that he is

22   out on bond.

23             Now, Your Honor, for the disagreements, due to the

24   significant flight risk in this case, the Government did ask

25   originally for $100,000 of the bond to be put up in cash.  The

1    Defense would like that number to be 25,000.

2            The Government did represent that we would meet in

3    the middle at $50,000, which I suppose is actually meeting

4    closer to the Defendant's proposal than in the middle.

5    However, that's where we're stuck.

6            The Defendant in this case has significant resources,

7    specifically $3,000,000 in funds related to this case have been

8    transferred into his and his wife's accounts.

9            And considering his contacts with the PRC, the fact

10   that he was acting as an agent for the PRC in the United

11   States, the significant financial resources that he has and

12   that were paid to him as a result of his work, 100 -- the

13   $50,000 as part of a bond to ensure his return to Court is not

14   so onerous as to be an unfair or unjust request in light of the

15   case and the charges here.  So that's the Government's position

16   as to cash on the bond.

17           In addition, the Government has requested perfection

18   of the bond prior to his release.  There's a number of reasons.

19   And I'll start with the fact that just sitting here now, we

20   don't have any suretor information as far as we're aware that

21   his wife and a family member will be the suretors on the case.

22   I don't -- I haven't spoken to them.  I don't have information

23   about their finances, separate and apart from what I know from

24   the investigation with regards to he and his wife and their

25   financial resources.

1          We have no assurances before the perfection of the

2   bond that this Defendant with all of his significant contacts

3   to the PRC consulate and the PRC will return to Court.

4          The Government is willing to consider perfection of

5   the bond in that the once the New York property attaches, and

6   the cash bond amount that we agree on or what the Court rules

7   is appropriate is fulfilled, that the Defendant could be

8   released before the Florida property attaches.  We understand

9   that the New York property will attach most likely more quickly

10  than the Florida property.

11         So we are willing to consider that, but to release

12  the Defendant before the perfection of the bond in this case

13  creates a significant risk of flight.

14         THE COURT:  Okay, Mr. Fankbonner, do you want to be

15  heard?

16         MR. FANKBONNER:  Yes, thank you, Your Honor.  I'll

17  begin by stating the obvious, which is that Pre-trial Services

18  does not recommend cash bail in this case.

19         At this point in our history, there's a general

20  consensus that cash bail is inappropriate in most cases in all

21  but the most severe cases, where there's an extraordinary risk

22  of flight in play.  And that's not in evidence here.  It's not

23  even suggested in the complaint and Pre-trial certainly didn't

24  see it.

25         Mr. Liu is a United States citizen.  He has lived in

1    the United States for 38 years.  The -- Your Honor has

2    undoubtedly seen this before.  The complaint does not make out

3    numerous extensive contacts with the Chinese consulate.  It

4    isn't there.  That's a statement that Ms. Dean is making at

5    this hearing, but there's no evidence that he's dealing with

6    the Chinese consulate.

7         There's an allegation in the complaint that he was

8    being directed by co-defendant Jason Sun, who and I quote is a

9    PRC national and appears to act as an intermediary between the

10   PRC government and Liu.

11        This is a complaint that was sworn to a week ago.

12   The allegation that there's millions of dollars passing through

13   Mr. Liu's hands is unfounded.  There's no evidence suggesting

14   that he has anything close to those funds.

15        The complaint mentions various -- it alleges that

16   there were various jobs, to put it that way, that were being

17   done at a rate of $3,700, $1,500 a piece, that consist of

18   requests for public records from a bodyguard in Florida.

19      (Background chatter)

20          THE COURT:  Hold on, Mr. Fankbonner.

21        Whoever's on the phone, can you please mute your

22   line?  Whoever's on the phone, we can hear you.  Can you mute

23   your line, please?

24          Does anyone know who that is?

25          THE COURT:  All right, we may need to hang up.  Go

1   ahead, Mr. Fankbonner.  We'll try to disregard whoever's

2   talking on the phone.

3          MR. FANKBONNER:  Sure, and I don't discount the

4   possibility that there's more to this case that the Government

5   hasn't put into a complaint.

6          I suppose that's possible, but the complaint should

7   allege the facts in as thorough a way as possible.  And here,

8   it indicates that there are payments of $1,500 being made to a

9   private investigator to obtain public records about these

10  individuals.

11         They describe an act of vandalism of a work of art by

12  a not particularly famous Chinese artist.  It's just -- this

13  just doesn't make out conduct anywhere near on the scale that

14  the Government would suggest in this colloquy that they

15  delivered.

16         But again, there's no evidence here that my client

17  has had any recent contact with China at all or that he has any

18  desire to go to China.

19         The complaint itself describes him as, in the

20  complaint, he is alleged to have said that he's apolitical,

21  that he's carrying out these jobs for a few bucks.

22         He's married to a U.S. citizen.  He has two U.S.

23  citizen children.  He has no criminal history whatsoever.  He's

24  lived in Queens for decades.  He has a house here.  He has or

25  he did until recently have a second home in Queens.

1      There isn't even really anything in here that

2  suggests unexplained income on a scale that would suggest that

3  he could make $100,000 in cash.  It's completely unreasonable.

4  It's frankly an extortionary sum and so is 50,000.

5      The exposure here I submit is -- it just doesn't

6  warrant an assumption that he's a flight risk.  And there's

7  nothing -- there's no presumption that he's a flight risk.  I

8  mean, this isn't the crime of violence.  It's not a narcotics

9  trafficking offense.

10      It's not -- I understand the implications here, the

11  insinuations made on the complaint, but if we look at the

12  actual conduct alleged here, as unsavory as it may be, it

13  doesn't in any way suggest that he's either a danger -- it's

14  not even alleged that he's a dangerous person, but he has

15  reason to flee the country, particularly since the Government

16  is requesting electronic monitoring.

17      If you have electronic monitoring, if you have a

18  curfew, if you have a surrender of his U.S. passport limiting

19  his movement to the Southern and Eastern Districts of New York,

20  I think it eviscerates the flight risk.  I just don't see this

21  person cutting off an ankle bracelet and running to Beijing on

22  the back of these charges.

23      So that's the source of our disagreement.  It would

24  be highly unusual, I think, to set that kind of money.  We

25  offered 25,000 because this is a sum that would not be

1    devastating to the family.  It would still represent a

2    hardship.  There would be an incentive for him to return to

3    Court, but it wouldn't put them in the courthouse.

4         And 100,000 would and 50,000 would as well.  It's an

5    enormous sum of money.  And there's no reason to assume that

6    this gentleman has it.  So that's the source of a disagreement.

7         It's also highly unusual to wait until the bond is

8    quote, unquote perfected to release the person.  I don't think

9    there's any reason to speculate that these properties don't

10   exist.  They've been verified.  Their market value has been

11   verified.

12        The first of the sureties is Mr. Liu's wife, who is

13   probably in the courthouse at this time about to come up here

14   and sign as a surety if Your Honor accepts her as such.

15        So that's where we are.  And we don't think it's

16   appropriate to frankly set any cash bail at all, but we'll

17   concede that much if it means the difference between my client

18   being released and not being released.

19        THE COURT:  Can you tell me little bit more about the

20   two properties, the one in Jericho and the one in Florida?  Are

21   they -- do they have mortgages on the properties or what's the

22   value of the property?

23        MR. FANKBONNER:  Yes, they do.  The property in

24   Jericho is the family home.  It's owned.  And actually, Ms.

25   Dean, if you would correct me on this if I'm wrong, I believe

1    that owned by Mr. Liu and his wife jointly.  It's New York

2    State, so I suppose anything they own, they own jointly.

3          The market value of that property is a 1,130,000

4    according to our firm's search.  There's a mortgage on the

5    house of as much as 630,000.  So we estimate the equity is

6    about 500K.

7          There's another property in Winter Garden, Florida,

8    which it's a property that they own or actually I'm sorry, it's

9    owned in the name of Mr. Liu's company.  And the market value

10   there is 494K according to our search, a mortgage of about

11   300,000, which means the equity is about 200,000.

12         So, together, those properties, the value of those

13   properties, the equity in them is about 700,000, which is I

14   submit a substantial guaranty.

15         THE COURT:  Okay.

16         MR. FANKBONNER:  Their bank accounts have nothing

17   close to -- their bank accounts are in the five figures, which

18   is why I've made the record I made.

19         THE COURT:  Okay, Ms. Dean, anything else?

20         MS. DEAN:  If I may very briefly respond to a couple

21   of Defense counsel's points.  There was a representation that

22   he doesn't have any -- didn't have any contacts as far as

23   travel to China, but I point out that the Pre-Trial Services

24   memo, it reported that the Defendant traveled to China over

25   three years ago, which may seem or may not seem like a long

1    time ago, but obviously, during the last two years, travel was

2    extremely limited internationally if not impossible because of

3    the pandemic.  So we do have a fairly recent travel history to

4    China.

5         But also to flee in this case, Your Honor, the

6    Defendant need only go to the PRC consulate in Manhattan.  So

7    there is a real risk of flight that is not as onerous as

8    traveling all the way to China to do so.

9         And finally, I'll just say that the representations

10   that the Defendant is not connected to the PRC or that we have

11   not sufficiently demonstrated the Defendant's connections to

12   the PRC, this entire case, Your Honor, is about the Defendant's

13   connections to the PRC and what he is doing in the United

14   States on behalf of the PRC.

15        So the entire complaint frankly it speaks for itself

16   as far as the strength of the connections that the Defendant

17   has to a foreign government.  And that creates the risk of

18   flight coupled with the financial resources.

19        THE COURT:  Okay, understood.  Look, given that the

20   parties have agreed on virtually all the terms of the bond, I'm

21   prepared to approve the bond on these terms.

22        I will require a cash deposit, but in the amount of

23   $30,000, okay?  So it's greater than the 25- proposed by

24   Defendants, but less than the 50- proposed by the Government,

25   okay?

1          And I'm not going to require the posting of that

2     property prior to his release.  Once that bond is deposited

3     with the Court, the Defendant may be released, okay?

4          All right, but I do approve the other terms of the

5     bond subject to signing by the two suretors and finding that

6     they're appropriate suretors as well, okay?

7          MS. DEAN:  Your Honor, may the Government make a

8     request in light of your ruling?

9          THE COURT:  Sure.

10         MS. DEAN:  We would request that until the properties

11    are attached then in light of your ruling, that the Defendant's

12    electronic monitoring consist of home imprisonment and that the

13    electronic monitoring that is just a curfew be imposed after

14    the properties are fully attached.

15         THE COURT:  Any objection, Mr. Fankbonner?

16         MR. FANKBONNER:  Yes, we would object to that

17    additional term, which I just --

18         (Background chatter)

19         THE COURT:  I'm sorry, whoever's on the phone, please

20    mute your line, because we can hear you.  All right, otherwise

21    we will disconnect you.

22         All right, go ahead, Mr. Fankbonner.

23         MR. FANKBONNER:  For the same reasons iterated

24    before, I don't see how that's necessary or appropriate.  I

25    mean, if one of the terms is that he has to stay away from the

1    PRC consulate, so be it.

2         I just don't think it's necessary frankly.  I mean,

3    if he's posting a $30,000 cash security, it really only takes a

4    few days for the properties to be attached.  I don't see why

5    it's necessary to confine him during that time.

6         THE COURT:  Okay, well, is there a reason why he

7    shouldn't be confined at that time if it's only for a few days?

8         MR. FANKBONNER:  Well, yes, I mean, there's a liberty

9    interest here.  And he's a working person.  And he needs to go

10   about his life.

11        I don't think there's any risk of flight that isn't

12   already mitigated by the cash deposit.  If the suretors sign,

13   obviously, there's an additional promise here that he will

14   return to Court.

15        I -- it'll be highly unusual if we change the facts

16   here and we made this a citizen of a foreign country who's in

17   LDR, who's charged with a narcotics offense.  I mean, I just

18   don't -- I think the idea that he's going to go to a Chinese

19   consulate if we persecute a prosecution here is fanciful in the

20   extreme, so we would object on those grounds.

21        THE COURT:  Okay, understood.

22        Ms. Dean, do you have an estimate as to how long it

23   may take for the two properties to attach?

24     (Counsel confer)

25        MS. DEAN:  So, Your Honor, because we don't know

1    about the Florida property, what we would propose is that while

2    the New York property is attaching, the home incarceration be

3    instituted, which would only take a day or two we believe.  And

4    then, at that point, we could move over to electronic

5    monitoring with the curfew.  That's the Government's proposal.

6              THE COURT:  Okay.  Understood.  So I will grant the

7    Government's request.  I will allow for home incarceration up

8    until Friday, okay?

9              MS. DEAN:  Oh.

10             THE COURT:  All right, so that will give the

11   Government time to attach the property.  And thereafter, the

12   bond will revert back to the proposed bond, okay, with the

13   curfew.

14             MR. FANKBONNER:  Yes, Your Honor.

15             MS. DEAN:  But Your Honor, my understanding is that

16   the Defense has to attach the property rather than the

17   Government.  So we're just requesting that the Defense be

18   ordered to attach the property rather than us.

19             THE COURT:  Understood.  However the property needs

20   for be attached whether it's confession of judgment or some

21   other form, that needs to take place by Friday, okay?

22             MR. FANKBONNER:  Understood, Your Honor.

23             THE COURT:  All right.  All right, so let me turn

24   now.  Do we have any of the suretors available at this time?

25             MR. FANKBONNER:  I can't visually recognize the

1    suretor.  I'll ask my client.

2         (Counsel confers with the Defendant)

3              MR. FANKBONNER:  Yes, my client's wife is here and

4    she would be the first of the suretors.

5              THE COURT:  All right, why don't you have her come up

6    to the podium?  And does she speak and understand English?

7              MR. FANKBONNER:  She can, but she may prefer to have

8    an interpreter.

9              THE COURT:  Okay, we will use an interpreter as well.

10             THE CLERK:  Where do you want her, Judge?

11             THE COURT:  Have her stand by the podium.

12             THE CLERK:  Oh.

13             To your left.  Right, yeah, the podium.  There you

14   go.  Okay, right.  Hi, how are you?

15             MS. GAO (through interpreter):  Hi, how are --

16             THE CLERK:  Judge Cho is going to ask you some

17   questions.  Okay, so and the proceeding's being recorded.  So I

18   just need to swear you.  So can you raise your right hand?

19        (Ms. Gao is sworn)

20             THE CLERK:  Thank you.  And can you just state your

21   name for the record and spell it for me?

22             MS. GAO:  First name H-O-N-G-Q-I-N.  Last name G-A-O.

23             THE CLERK:  G-A-O's the last name?

24             MS. GAO:  Yeah.

25             THE CLERK:  Ms. Gao, right?  Okay, thank you very

1   much.

2           Okay, Judge.  Ms. Gao.

3           THE COURT:  All right.  Thank you Ms. Gao, and thank

4   you, Ms. Gao, for being here today.  Just so I understand, what

5   is your relationship to Mr. Liu?

6           MS. GAO:  He's my husband.

7           THE COURT:  All right, so I need to ask you some

8   questions.  Let me first explain to you that your husband has

9   been charged with some very serious federal crimes.

10          As part of these proceedings, the parties have

11  reached an agreement on some terms and I'll have ordered some

12  other terms that will allow for him to be released.  And the

13  terms of his release are set forth in what's called a bond.

14          And his attorney has indicated that you are willing

15  to co-sign this bond to assure that he complies with all the

16  terms of his release.

17          And I understand this might be very difficult for

18  you.  If at any point in time you have any questions, you can

19  ask me, okay?

20          MS. GAO:  Okay.

21          THE COURT:  Okay, and interpreter, be sure to speak

22  into the microphone, so we can hear the answers as well.

23          THE INTERPRETER:  Okay, yes.

24          THE COURT:  All right, Ms. Gao, what is your current

25  address?

1          MS. GAO:  40 Sullivan Drive in Jericho, New York.

2     Zip code is 11753.

3          THE COURT:  All right, and how long have you been

4     married?

5          MS. GAO:  About 10 years.

6          THE COURT:  And who lives at that property besides

7     you?

8          MS. GAO:  Three children and two elders.

9          THE COURT:  Okay, and what are the ages of the

10    children generally?

11         MS. GAO:  16, 11, and 7.

12         THE COURT:  All right, and who are the two elderly

13    people that live at that household with you?

14         MS. GAO:  My father and Mr. Liu's father.

15         THE COURT:  Okay.  All right, so just to let you

16    know, I am approving a bond that will secure the release of

17    your husband today.

18         It's going to require a $1,000,000 bond, which you do

19    not need to pay.  Only if your husband violates the terms of

20    his release, the Government may seek to recover on that

21    $1,000,000 bond.  Do you understand?

22         MS. GAO:  I understand it.

23         THE COURT:  All right, and this bond is also secured

24    by two properties, the property in Jericho and also the

25    property in Florida.  Do you understand?

1          MS. GAO:  That's including in the bond?

2          THE COURT:  That's correct.  All right, now the

3   property in Jericho is titled in your name, or your husband's

4   name, or both your names?

5          MS. GAO:  My name only.

6          THE COURT:  All right, I want you to understand that

7   it's only in the event that your husband violates the terms of

8   his release, the Government may seek the sale of that property.

9   Do you understand that?

10          MS. GAO:  I understand.

11          THE COURT:  Okay.  Now the other terms of his release

12   are the following.  One, he must remain in New York City or

13   Long Island.  He must avoid all PRC facilities including the

14   PRC consulate, surrender all passports, and is placed under the

15   supervision of what's called Pre-Trial Services.  He's confined

16   to his home until Friday.  And then thereafter, there will be a

17   curfew imposed.

18          Are you currently working?

19          MS. GAO:  I am taking care of my father-in-law right

20   now and I get paid for doing that.

21          THE COURT:  Okay, and approximately how much money do

22   you earn taking care of your father-in-law?

23          MS. GAO:  I receive about $480 after taxes.  And Mr.

24   Liu also receive about $300.

25          THE COURT:  Okay, is that per month or per week?

1          MS. GAO:  Per week.

2          THE COURT:  Okay.  All right, so I find you to be an

3    appropriate suretor.  I want to confirm with you, knowing all

4    the conditions of this bond, do you still agree to be a

5    co-signer on this bond?

6          MS. GAO:  Yes, I agreed.

7          THE COURT:  Okay, all right, I'll approve her as a

8    suretor as well.  Do you authorize the Court to sign your name

9    to the bond as well?

10          MS. GAO:  Yes.

11          THE COURT:  Okay.  All right, that's it.  You can sit

12    down.  Thank you.

13          All right, so I understand we have another suretor,

14    Mr. Fankbonner.  Is that suretor available today or some other

15    day?

16          MR. FANKBONNER:  They can contact -- I was given a

17    telephone number by Madam Deputy.  I've forwarded that to the

18    suretor, but they're not able to come into Court in person

19    today.

20          THE COURT:  Are they available by telephone now?

21          MR. FANKBONNER:  I believe so.

22          THE COURT:  All right, can you see if they're on the

23    line?

24          MR. FANKBONNER:  Sure, I'll --

25          THE COURT:  If the -- who is the second suretor?

1          MR. FANKBONNER:  The second suretor is my client's

2    brother-in-law.  The name is Gan Gao, G-A-N G-A-O.  And I can

3    text my office to reach out to him or step out briefly and call

4    him myself.

5          THE COURT:  All right, well, let me check.

6          Mr. Gao, are you on the phone?

7          All right, does he speak English, do you know?

8          THE DEFENDANT:  No.

9          MR. FANKBONNER:  I believe he does, but he would also

10   benefit from an interpreter as with the first of the sureties

11   or the suretors, excuse me.

12         THE COURT:  All right, so why don't you find out if

13   he's available by phone right now?  If not, he'll have to come

14   back for another day for bond signing.

15         MR. FANKBONNER:  I will do so.  May I step out

16   briefly, Your Honor?

17         THE COURT:  Go ahead.

18         MR. FANKBONNER:  Thank you.

19         THE CLERK:  I think the Government's consenting to

20   the suretor to sign by Friday I thought.  No?  I mean --

21         MS. DEAN:  That's fine for the Government.

22         THE COURT:  Okay, so we will adjourn now if he's not

23   available by phone.  And I don't hear him on the line.  So we

24   will have a bond signing on Friday --

25         MR. FANKBONNER:  Thank you, Your Honor.

1          THE COURT:  -- for Mr. Gao, okay.

2          THE CLERK:  Just send me an email.  If she can do it

3   tomorrow, let me know.  I'll just send an email, okay?

4   Whatever day.  Okay, thanks.

5          THE COURT:  Okay, anything else for the Government

6   today on Mr. Liu?

7          MS. DEAN:  Nothing further.  Thank you, Your Honor.

8          THE COURT:  All right, anything else for the

9   Defendant?

10         MR. FANKBONNER:  No, Your Honor, just to be clear, he

11  must post the cash guaranty with Pre-trial, is that -- I'm

12  sorry I'm not --

13         THE COURT:  Anna, do you know?

14         UNIDENTIFIED SPEAKER:  No it's with the Clerks.  He

15  has to do it downstairs.

16         THE COURT:  Okay.

17         MR. FANKBONNER:  Oh the Clerks, okay.

18         UNIDENTIFIED SPEAKER:  For him to be released today,

19  you want him to cash $30,000 --

20         THE CLERK:  By Friday.

21         THE COURT:  He posted $30,000 today?

22         MR. FANKBONNER:  I have to confer with the family.

23         THE COURT:  Go ahead and check.

24         THE CLERK:  That might be a challenge, I'm sorry,

25  Judge, because it's close to 5.  So they're shutting down

```
 1    downstairs.

 2              THE COURT:  Understood.  Why don't you check now, Mr.

 3    Fankbonner?

 4              MR. FANKBONNER:  I'll confirm.  Thank you.

 5         (Pause)

 6              MR. FANKBONNER:  We probably don't.  She's prepared

 7    to write a check, Your Honor, but I'm not sure if that's --

 8              THE COURT:  Okay, so after the proceeding, go ahead

 9    downstairs to the Clerk's Office and post the $30,000 bond.

10    All right.

11              Now in the event --

12         (Proceedings concluded at 4:50 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


/s/ *Chris Hwang*
_____          September 16, 2024

Chris Hwang                      Date

Court Reporter